## GEORGE FRAME'S PETITION.

Orphans' Court.  Sussex.  July 23, 1819.

*Ridgely's Notebook II, 465.*

Benjamin Prettyman, Esq., witness.  Knows the land of Robert Frame.  After the death of Robert Frame's widow, I was appointed among others to set an annual valuation on this land; and Paynter Frame then mentioned his brother's will and the manner he, Robert, had devised this land.  And he, Paynter, said he intended to give this land to Elizabeth.  Witness does not know that Paynter ever did any act to assign or vest this land in Elizabeth.  Afterwards more than once I heard him, Paynter, say it was his intention to give this land to Elizabeth.  The first time when I was making the annual valuation Paynter said that he supposed Elizabeth's land devised to her by her father was not equal to the other children.  Paynter Frame died several years after the first conversation.  He died suddenly by the kick of a horse.

Joshua Collins, witness.  I have frequently heard Paynter Frame say that he intended to give this land to Elizabeth.  He called it her land.  I heard him say this frequently, and call it hers more than half a dozen time.  He died suddenly by means of the kick of a horse.  He said that the land was left at his disposal; that she, Elizabeth, was not equal, and he thought it his duty to do it so.  Mary Frame, the widow of Robert Frame, died May 3, 1806.

Paynter Frame was the guardian of the aforesaid Elizabeth and of Robert and George, all children of Robert Frame. On July 15, 1806, he obtained an order for the valuation of, or making an estimate of rents of the lands, of the said Elizabeth, Robert and George. The estimate was made by the freeholders January 10, 1807, and returned July 22, 1807. The order was general, it did not specify any particular lands, nor to which of the said wards any parcel of land belonged. So the estimate was made. Paynter Frame left no account and settled none, as guardian of any of the children.

Robert Frame, by his will dated July 20, 1801, devised to his wife, Mary Frame, for life, an hundred acres of land in Angola Neck, purchased by him of John Tatcher. Then there is this clause in the will:

"As I shall in this my will make a disposition of all the rest and residue of my lands amongst my several children, 'tis my desire that if my brother, Paynter Frame, should survive my wife, and judge that I have made an unequal division of my lands amongst my several children, he is hereby authorized by me, and is at liberty to say and direct how this said tract of land I purchased of John Tatcher, as above mentioned, shall be divided amongst them; either to give it to one or more of them, as he thinks proper, and on his doing of the same, it shall be conclusive and binding on the whole, as tho' I had actually made a disposition of it myself in this my will. But in case my said brother does not survive my wife so as to make such division of said land, the law of course must take place."

The testator then devised to his children severally in fee several parcels of land. Paynter Frame survived Mary, the widow of Robert Frame. He is now dead and made no division or disposition of the land in Angola Neck purchased by the testator of Robert Frame, other than as Benjamin Prettyman and Joshua Collins have testified.

THE CHANCELLOR. This land has not been disposed of by the testator after the death of his widow. No interest passed by his will. And this is not a power merely to apportion that which a legally executed instrument had given or disposed of, but it is a power to grant or dispose of what has not been granted or devised; and consequently Paynter Frame was the person who had the power to do that which the testator himself might have done. Now as the manner has not been prescribed in which this power should have been executed, it ought to have been performed in such a way as the law requires for the disposition

of that which is the subject matter upon which the power given was to operate. Land cannot pass by a parol contract or declaration. It must be in writing; and therefore as Paynter Frame never executed any writing in execution of this power, the verbal declarations which he made are not sufficient to vest in Elizabeth this land. Besides, the declarations did not seem to be intended by P. Frame as an execution of the power, but merely as expressions of the intention how he would futurely exercise the discretion committed to him. The law, as the testator said, must take its course.

*Vide.* Pow. Powers 83, 84, 1 P.Wms. 740, *Longford v. Eyre,* 2 P.Wms. 258, *Wagstaff v. Wagstaff.*